```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

GOZONE, L.L.C. & MAC-RE L.L.C.                    CIVIL ACTION

VERSUS                                            NO. 13-6159

AMTAX HOLDINGS 303, LLC  &                        SECTION "B"(4)
AMTAX HOLDINGS 430, LLC

### ORDER AND REASONS

NATURE OF THE MOTION

Before the Court is Defendants' Motion to Disqualify Plaintiff's Counsel, Plaintiff's brief in opposition, and Defendants' reply thereto (Rec. Docs. 9, 15, & 19);

**IT IS ORDERED** that the Motion is **DENIED.** (Rec. Doc. 9).

FACTS AND PROCEDURAL HISTORY

This case arises from a dispute between several partner entities within two limited partnerships, Live Oak Manor Limited Partnership ("LOM I"), and Live Oak Manor Subdivision II, L.P. ("LOM II" ; collectively, the "Partnerships"). The Partnerships own and operate residential housing complexes in Waggaman, Louisiana.

Plaintiff Gozone, LLC ("Gozone") served as general partner for both LOM I and II; whether Gozone remains or should remain a general partner is the subject of this suit. Plaintiff MAC-RE, LLC provided property management services for the Waggaman, Louisiana properties. Again, whether MAC-RE continues or should continue to manage the Waggaman properties is the subject of this suit. Defendants Amtax Holdings 303, LLC ("AMTAX 303")and Amtax Holdings

430 ("AMTAX 430") are the investor limited partners in LOM I and II, respectively.

Problems within the Partnership arose after August 29, 2012, when Hurricane Isaac passed through the Waggaman area causing roof damage to the Waggaman properties. Thereafter, the parties began a tortuous dispute over who was responsible for payment of repair costs and from which source the necessary funds should be drawn. The AMTAX entities asserted that the relevant partnership agreements obligated Gozone to cover such costs with an "Operating Deficit Loan." Gozone argued that, among other things, the AMTAX entities wrongfully withheld insurance payments and wrongfully created a deficit in the first place. These disputes ultimately gave rise to several suits in state court.

First, in April of 2013, non-party JF&A, LLC, a contractor that completed repairs at each of the Waggaman facilities, filed suits in state court against LOM I, LOM II, Gozone, and MAC-RE seeking payment for such repairs. (the "JF&A Actions"). Apparently, the dispute between Gozone and the AMTAX entities delayed payment to JF&A, with each party arguing that the other should foot the bill.  Shortly after initiation of those suits the AMTAX entities endorsed several checks from the properties' insurer, which Gozone then used in conjunction with funds from the Partnerships' "Replacement Reserve" account to pay JF&A, and JF&A voluntarily dismissed both suits with prejudice.

Despite resolution of the JF&A suit, the parties continued to

argue over finances. The AMTAX entities continued to demand that Gozone replenish the "Replace Reserve" account, provide an "Operating Deficient Loan," and threatened removal of Gozone as general partner if it did not comply. Gozone responded by letter several days later on August 21, 2013, with accusations that the AMTAX entities forfeited their partnership interests by failing to fund certain capital installments under their respective partnership agreements. Roughly two weeks later, on September 6, 2013, Gozone filed two suits in state court, one against each AMTAX entity, with each complaint purporting to initiate suit on behalf of the respective Partnerships "by and through its General Partner, Gozone." The following day the AMTAX entities sent Gozone letters purporting to remove Gozone as general partner from each partnership for breaching the relevant partnership agreements. They then purported to replace Gozone as general partner with another entity, Plan B, Inc., which in turn purported to remove MAC-RE as manager of the Waggaman facilities.

Several weeks later Gozone and MAC-RE initiated the instant suit in state court, seeking monetary damages and declaratory relief that the each plaintiff was improperly removed from their respective roles. The Defendants timely removed the case and now move to disqualify Plaintiff's counsel, David Culpepper, for alleged conflicts of interest.

In support of their motion to disqualify, the Defendants make

three primary contentions-they essentially argue that Culpepper faces three conflicts. First, they argue that Culpepper has a concurrent conflict because he represents the Partnerships in the initial state actions while simultaneously representing one partner, Gozone, against another, each of the AMTAX entities. Next, they contend in general terms that because the Partnerships retained Culpepper as their counsel "in the payment dispute with JF&A," any subsequent suit against individual partners involving partnership matters creates a conflict arising from prior representation. Finally, the Defendants contend that MAC-RE's interests are adverse to the Partnership and therefore give rise to conflict. Each of these contentions, of course, rest on the claim that Culpepper had a client attorney relationship with the Partnerships.

LAW AND ANALYSIS

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir.1992). The party seeking disqualification bears the burden of proving a conflict of interest requiring disqualification. *See*, *e.g. United States v. DeCay*, 406 F.Supp.2d 679, 683 (E.D.La.2005) (citing F.D.I.C. v. U.S. Fire. Ins. Co., 50 F.3d 1304, 1316 (5th Cir.1995)). "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *In re Yarn Processing*

*Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976). In any event, Ethical motions are guided by both state and national standards. *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311-12 (5th Cir. 1995). The relevant standards in this case are set forth in the Local Rules of the Eastern District of Louisiana, the Rules of Professional Conduct for the Louisiana Bar, and the American Bar Association's Model Rules of Professional Conduct. None of these standards materially differ with respect to the instant motion. Under each standard for a conflict to arise there must, of course, have been a client-attorney relationship between the attorney in question and each of the "clients" with conflicting interests.

Here, there is nothing in the record substantiating an attorney-client relationship between Culpepper and the Partnerships, either past or present. To the extent the Defendants assert that Culpepper previously represented the partnerships in payment disputes with JF&A, they have produced no evidence. The only "evidence" they provide in support of their claim is the pleading in the JF&A Action. (*See* Rec. Doc. 19-1). However, that JF&A named the Partnerships in a state action, however, does nothing to show that the Partnerships retained or otherwise developed a client-attorney relationship with Culpepper with respect to that action.[1]

---

[1] In their reply brief, the Defendants contend that the Plaintiffs concede that Culpepper represented the Partnerships. (Rec. Doc. 19 at 2). This contention is perplexing considering that the Plaintiffs expressly contradict that claim on the very page cited by Defendants for such "concession." (*See* Rec. Doc. 15 at 9).

Moreover, that Culpepper filed suit against the AMTAX entities "on behalf" of the respective Partnerships "by and through its General Partner," Gozone, does not give rise to an attorney-client relationship with the Partnerships per se. The Plaintiffs' state suits are only nominally on behalf the partnerships, a point that each of the AMTAX entities have essentially argued in state court in filing their Exceptions of Lack of Procedural Capacity. (*See* Rec. Doc. 15-1 at 4, 13).

Simply put, this case quite clearly arises from an intra-partnership dispute between general and limited partners. The Defendants have failed to satisfy their burden of showing that Culpepper formed an attorney-client relationship with the Partnerships in the first place. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Disqualify is **DENIED.**

New Orleans, Louisiana, this 23rd day of June, 2014.

_____
UNITED STATES DISTRICT JUDGE